**EXHIBIT A**

**DECLARATION OF ERICA MAINE IN SUPPORT OF VERIFIED COMPLAINT FOR FORFEITURE IN REM**

I, Erica Maine, Special Agent of the Drug Enforcement Administration, do hereby declare:

**Introduction and Agent Background**

1. I am a Special Agent ("SA") with the U.S. Drug Enforcement Administration ("DEA") and have been since June 11, 2017, as such I am a "federal law enforcement officer" pursuant to Rule 41 of the Federal Rules of Criminal Procedure, that is "a government agent … who is engaged in enforcing the criminal laws and is within any category of officers authorized by the Attorney General to request a search warrant."

2. As an SA with DEA, I have received specialized training in narcotics investigations from the DEA Academy in Quantico, Virginia. This academy consists of approximately 650 hours of comprehensive classroom training from the DEA in specialized narcotic investigative matters including, but not limited to, assets derived from narcotics trafficking and the investigation of individuals involved in the smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances. I worked on investigations of large-scale drug trafficking organizations in Phoenix, Arizona from January 2018 to April 2022 at the Phoenix DEA Divisional Office. I am currently assigned to the DEA Baltimore District Office, Strike Force Group 3, which investigates drug trafficking organizations and their ties to violence.

3. As an SA, I have performed various tasks, including but not limited to: conducting physical surveillance by observing and recording movements of persons suspected of trafficking in drugs; interviewing witnesses, confidential sources ("CSs"), and sources of information ("SOIs") regarding the illegal trafficking of drugs and the distribution of monies and assets derived

from illegal trafficking of drugs; and functioning as a case agent by supervising specific investigations involving the trafficking of drugs and the laundering of money.

4.  While conducting drug investigations, I have interviewed persons involved in the distribution of illegal drugs. I have consulted with other experienced investigators concerning the practices of drug-traffickers. I have participated in two wiretap investigations, one as a co-case agent, by reading line sheets, monitoring live calls or having live calls interpreted, responding to actionable intelligence gained from intercepted communications, assisting in the arrests of intercepted targets, seizing narcotics from information gained through intercepted communications, authoring and preparing numerous affidavits for pen registers, telephone tracking warrants, mobile tracking warrants, residential search warrants, and cellular devices.

5.  Through my training and prior experience in narcotics trafficking investigations and arrests, I am familiar with the actions, traits, habits, and terminology utilized by narcotics traffickers. I am familiar with the ways in which drug traffickers conduct their business, including methods of importing and distributing narcotics, money laundering, the use of cellular telephones and the Internet to facilitate their illegal acts, and the use of numerical codes and code words to conduct narcotics transactions. Based on this familiarization, I know the following:

   a. Drug trafficking is an ongoing and recurring criminal activity. As contrasted with crimes against persons, which tend to be discrete offenses, drug trafficking is an illicit commercial activity that is characterized by regular, repeated criminal activity.

   b. Drug traffickers often maintain on hand large amounts of both drugs and currency in order to maintain and finance their ongoing drug business, as well as paraphernalia used in the manufacture, packaging, preparation, and weighing of narcotics in preparation for trafficking, and that drug traffickers maintain these items where they have ready access to them.

   c. Drug traffickers use uninhabitable locations (for example, vacant dwellings, storage locations, etc.), as well as populated locations (for example, businesses, apartments, etc.), often under another person's name, as "stash locations" for the

      storage of drugs and/or currency, as well as to process and package drugs for distribution.

d. Drug traffickers often place control and ownership of assets (including real property) in names other than their own to avoid detection of those assets and locations by government agencies. Even though assets are in the names of other people, drug traffickers retain ownership, control, and use of the assets, exercising dominion and control over them.

e. Drug traffickers must maintain on-hand large amounts of currency to finance their on-going drug business.

f. Drug traffickers often have unexplained wealth, assets, and a high standard of living with no reported income which is probative evidence of crimes involving drug trafficking.

g. Drug traffickers often maintain financial records and financial instruments related to their narcotics transactions and the profits derived from those transactions including, but not limited to, currency, bank checks, cashier's checks, Western Union receipts, money orders, stocks, bonds, precious metals, and real estate records.

**Purpose of this Declaration**

6. This declaration is submitted in support of a Verified Complaint for Forfeiture *In Rem* of $200,159.82 in Funds held in Bank United Account #9856119377 in the name of UT Towson, LLC dba Universal Title, Towson (Asset ID: 24-DEA-711311, the "Defendant Property"). The Defendant Property is proceeds from the sale of 1709 E. 33rd Street, Baltimore, Maryland 21218. The Bank United account holding the funds (the "Escrow Account") was opened on February 29, 2024 to facilitate the release of these funds to seller Vacshon BROWN.

7. I submit there are sufficient facts to support a reasonable belief the Defendant Property was involved in a transaction or attempted transaction in violation of federal money laundering statutes 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957, or is property traceable to such property, and is thus subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

3

## Summary of the Investigation

8. On February 7, 2024, a federal grand jury indicted Vacshon BROWN on charges of conspiracy to possess with intent to distribute controlled substances, possession with intent to distribute controlled substances, possession of a firearm by a prohibited person, possession of a firearm in furtherance of a drug trafficking crime, conspiracy to commit money laundering, and four other substantive money laundering counts (Criminal No. JKB-24-035).

9. The Baltimore Office of the DEA began investigating BROWN in May 2022. Investigators determined BROWN was a source of supply of drugs for Aaron McNeil, who operated a street-level drug shop in the 600 block of N. Carrollton Avenue, Baltimore, Maryland. BROWN used numerous bank accounts, with various banking institutions, to deposit cash drug trafficking proceeds or to convert cash drug trafficking proceeds into cashier's checks that would later be deposited into those accounts. BROWN's accounts were opened both in his own name and in the names of various shell companies created by BROWN. These companies did not have any known physical locations, business operations, employees, or income that was not commingled with BROWN's drug trafficking proceeds.

10. After depositing the proceeds from his drug trafficking activity, BROWN transferred funds between his accounts to pay for, among other things, real estate purchases and repair costs.

11. Based on a review of the State of Maryland Department of Assessments and Taxation, BROWN has no history of wages in the State of Maryland. Investigators were unable to find any legitimate employment history for BROWN.

12. On January 23, 2014, a federal grand jury sitting in the District of Maryland returned an Indictment charging BROWN with Possession with Intent to Distribute Heroin, in

4

violation of 21 U.S.C. § 841(a)(1) (Count One); Felon in Possession of a Firearm, in violation of 18.U.S.C. § 922(g)(1) (Count Two); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c) (Count Three). *See* Criminal Case No. CCB-14-32, ECF No. 1. BROWN pled guilty to Counts One and Three of the Indictment, *id.*, ECF No. 32, and was sentenced to 72 months imprisonment. *Id.*, ECF No. 38. The charges to which BROWN pled guilty arose from a September 16, 2013 traffic stop during which officers of the Howard County Police Department searched BROWN's person and car, recovering a loaded .45 caliber handgun, approximately $21,900 in U.S. currency, and 38 bags containing heroin.

13. In November 2013, roughly two months after the above-described traffic stop, despite not having any history of legitimate income or employment, BROWN purchased the real property located at 1709 E. 33rd Street, Baltimore, Maryland 21218 (the "33rd Street Property") outright for $34,000. Based on my training and experience, as well as the lack of legitimate income and BROWN's known drug trafficking activity during this time period, I believe that BROWN purchased the 33rd Street Property using drug trafficking proceeds.

14. BROWN has listed the 33rd Street Property as an address for multiple shell companies that he used to launder drug trafficking proceeds. Additionally, BROWN used the 33rd Street Property as a "stash house" for his drug trafficking activity. In connection with the pending criminal case, DEA agents conducted searches of numerous properties connected to BROWN on July 27, 2023, pursuant to warrants issued by the Honorable A. David Copperthite, U.S. Magistrate Judge for the District of Maryland (Case Nos. 23-MJ-2023 through -27). During the course of the search of the 33rd Street Property, agents found 11 operable firearms, an assortment of ammunition, a hydraulic kilogram press, and additional paraphernalia and cutting agents used during the processing of controlled substances for sale.

5

15. Transactions from BROWN's accounts show that he has used drug trafficking proceeds to finance repairs and improvements to his properties. For example, in 2020 and 2021, BROWN, through one of his shell companies, wrote over $43,000 in checks to companies and individuals in the Maryland area in connection with home improvement. Based on the timing of these transactions, I believe at least some of them were for improvements to the 33rd Street Property: BROWN was incarcerated shortly after he purchased the 33rd Street Property and was not released from prison until 2019. The timeframe for these checks is consistent with him making improvements to the property after his release.

16. As noted above, BROWN's only known source of income is from drug trafficking activity; he has a negative wage history in Maryland. And although his wife, Nakia Brown, was involved in the sale of the property, her reported wages in Maryland between 2016 and 2023 ranged from $31,846 to $85,297.87. Based on my training and experience, the wage histories of BROWN and his wife are inconsistent with them being able to afford the improvements to the 33rd Street Property, and I therefore believe that the improvements were paid for by laundering the proceeds from BROWN's drug trafficking activity.

17. In November 2023, BROWN listed the 33rd Street Property for sale, with an asking price of $225,000. In January 2024 (prior to the Indictment in the pending criminal case), BROWN accepted a bid for the asking price, and the 33rd Street Property went under contract to be sold. Investigators learned that the closing date for the sale was March 11, 2024. Investigators further determined that, after deduction of relevant fees and payments related to the sale, the title company

handling the sale would disburse $200,159.82 to the Escrow Account, with the plan of transferring the full amount of the sale proceeds to BROWN.[1]

18.  On March 8, 2024, the Honorable Adam B. Abelson, U.S. Magistrate Judge for the District of Maryland, signed a seizure warrant authorizing the government to seize up to $200,159.82 in funds in the Escrow Account (Case No. 24-MJ-611). The government seized the Defendant Property on March 11, 2024, after the sale was completed and the funds were disbursed to the Escrow Account, but before BROWN was able to take possession of the funds.

### Conclusion

19.  Based on the foregoing facts and my training and experience, I submit that the Defendant Property was involved in a transaction or attempted transaction in violation of federal money laundering statutes 18 U.S.C. §§ 1956 and 1957 and is thus subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 9th day of September, 2024.

_____
Erica Maine
*Special Agent*
*Drug Enforcement Administration*

---

[1] The United States has never alleged, nor is there any evidence to suggest, that the buyers, agents, title company, or any other parties to the sale of the 33rd Street Property—with the exception of BROWN and his wife—were aware of BROWN's drug trafficking activities, much less that his drug trafficking proceeds had been used to finance the purchase and improvement of the property.